## THE PEGASUS.[1]

*(Circuit Court, D. Connecticut. January 7, 1884.)*

COLLISION—WHEN LOSS RESULTING FROM, SHOULD BE DIVIDED.
    Even gross fault committed by one of two vessels approaching each other from opposite directions does not excuse the other from observing every proper precaution to prevent a collision; and when, if such precaution had been observed, the collision would have been avoided, the loss should be divided.
    See *The Maria Martin*, 12 Wall. 31.

The following are the findings of fact on this appeal:

(1) About half past 10 o'clock in the evening of July 21, 1882, the steam-tug Whipple, having in tow the barge Allandale, both owned by the libelant, lashed to her starboard side, left Jersey City, bound for pier 8, East river. The tug and tow had all their regulation lights properly set and brightly burning. The night was dark, but the lights were easily visible for a distance of over a mile, but her green and red lights were obscured to the view of any vessel bearing on the starboard of the tug, by the barge. The tide was running flood. (2) As the tug and tow passed abreast of pier 1, North river, about 100 yards off in the river, their officers saw the colored lights of the Pegasus, an iron steam-boat then off Castle William, about a mile distant. At that time the Whipple was on a course about south, and the Pegasus was on a course about north, or meeting respectively head and head. Thereupon the tug and the Pegasus both commenced to swing to the eastward in the East river, upon courses converging towards each other, the tug to reach pier 8, and the steamer,

[1] See S. C. 15 FED. REP 921.

as was her uniform custom when there was a flood tide, to make a sheer on a north-east course to facilitate her landing on the south side of her pier. (3) At this time the Whipple lost the green light of the Pegasus and saw only her port light, but blew two whistles to inform the Pegasus that she wanted to go on her starboard side, and, without getting any reply, continued under a starboard wheel without giving any further signal. The Pegasus continued on her north-easterly sheer until she was about a fourth of a mile from her landing place, when she starboarded her helm and swung to the westward, as she usually did, in order to make her customary landing. She did not see the tug or barge until too late to avoid a collision. (4) The collision occurred at a point about 300 yards south-west of the upper bath-house on the battery. The barge was seriously injured by the blow of the Pegasus. (5) The Pegasus was going at the speed of about 12 miles an hour until she starboarded her helm, when she slowed down to four or five miles an hour. The speed of the tug was about three miles an hour all the time. (6) The Pegasus did not hear the signal of the tug, nor did she see the lights of the tug at any time until the collision. (7) The captain of the tug knew the course the Pegasus was accustomed to take in order to make her landing, but assumed that as he had signaled her that he was going on her starboard side, she would conform her movements accordingly.

As conclusions of law, I find:

(1) That both vessels were in fault,—the tug for going to starboard and keeping on that course when she lost the green light of the Pegasus, without any signal from the Pegasus assenting to that course; and the Pegasus for failing to see the lights of the tug and not adopting necessary precautions accordingly. (2) That the damages should be divided between the parties.

*Beebe, Wilcox & Hobbs*, for libelant.
*MacFarlane & Adams*, for claimant.

WALLACE, J. The proofs in this case fully sustain the conclusions of the court below, as expressed in the opinion of the district judge, except as to his finding that there was no fault or negligence on the part of those in charge of the Pegasus in not seeing the tug and barge until too late to avoid a collision. The learned district judge states in his opnion that he cannot find why the two vertical white lights on the flag-staff of the tug and barge were not visible to the steamer, although they were burning brightly. The reason why the the red and green lights on the tug were not seen, is obviously, as he finds, because they were hidden by the barge from the time the tug swung under her starboard wheel for the East river, thus bringing the barge between her and the Pegasus. The two vertical white lights were suspended on the flag-staff of the tug, one about a foot above the other, and the lower light was 21 feet above the water. It is possible that these lights may have been somewhat obscured from the Pegasus by the pilot-house of the barge at times while the vessels were approaching each other, but in the constanstly shifting positions of the vessels they could not have been hidden continually; and those in charge of the Pegasus do not rely upon any such theory, but insist that there were no lights on the tug, and that none were to be seen when the vessels collided. These lights ought to have been

seen during the time the Pegasus was on her north-east course, which covered three quarters of a mile; and in the absence of any fact to explain why they were not seen, there can be no other rational conclusion except that it was owing to some relaxation of vigilance on the part of the Pegasus. Precisely where this negligence should be located is not important; it suffices that there was failure to see them when they were plainly visible to those in charge of the steamer, if they had used due diligence.

Agreeing with the district judge that the tug was in fault, and that the conduct of her captain was grossly negligent in keeping under his starboard wheel when the green light of the Pegasus had been closed upon him for so long a distance, and in attempting to keep his course when his signals had not been answered, and when he had reason to know that the Pegasus was making for her usual landing, nevertheless the collision was not attributable solely to the tug. As the district judge states in his opinion: "It is manifest that if the Pegasus had seen or ought to have seen the lights of the tug and barge, her management was negligent, and she was in fault." In such a case the damages must be apportioned between the offending vessels. Even gross fault committed by one of two vessels approaching each other from opposite directions does not excuse the other from observing every proper precaution to prevent a collision; and when, if such precaution had been observed the collision would have been avoided, the loss should be divided. *The Maria Martin*, 12 Wall. 31.

A decree is accordingly ordered dividing the loss, with a reference to a master to ascertain the amount. No costs are allowed to either party as against the other in the court below, but costs of the appeal are awarded to the libelant.